IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DARWIN KNIGHT (AIS # 194598),        :

      Plaintiff,        :

v.        :        CIVIL ACTION 08-0301-KD-C

ALLEN LANG, et al.,        :

      Defendants.        :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed

a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the

undersigned on Defendants' Motion for Summary Judgment (Docs. 12, 13, 21), and

Plaintiff's opposition thereto. (Docs. 18, 19, 20). After consideration of these pleadings

and the evidence presented by the parties, and for the reasons set forth below, it is

recommended that Defendants' Motion for Summary Judgment be granted and that

Plaintiff's action against these Defendants be dismissed with prejudice.

## I. FACTS

1. From its review of the record, the Court summarizes the parties' allegations

which are material to the issues addressed in this Report and Recommendation.

2. According to Plaintiff, on May 17, 2008, while incarcerated at Holman

Correctional Facility ("Holman"), Defendant, Correctional Officer Allen Lang, informed

Plaintiff that he was being removed from the prison hobby craft program for failing to comply with the institutional requirement that he purchase at least $120 in craft supplies every three months. (Doc. 5 at 7, Complaint).

3. Officer Lang informed Plaintiff that he had thirty days to remove his personal property from the hobby shop and send it to his family. (Id.).

4. The hobby craft shop minimum purchase requirement was adopted by Warden Culliver some time prior to September 1, 2005, to prevent inmates in the program from hoarding their leather boxes and allowing other unauthorized inmates to work out of them. (Doc. 13, att. 1 at 1, Culliver affidavit; Doc. 21, att. 1 at 33, Holman newsletter).

5. All of the inmates, including Plaintiff, were aware of the policy. (Id.).

6. It is undisputed that, at the time that Plaintiff was dropped from the hobby craft program, he was in violation of the quarterly minimum purchase requirement. (Doc. 19 at 4-5, Plaintiff's Opposition; Doc. 21, att. 1 at 20-30, Plaintiff's Supply Orders; Doc.13, att. 1 at 1).

7. According to Plaintiff, he wrote Defendants, Warden Grantt Culliver and Alabama Department of Corrections ("ADOC") Commissioner Richard Allen, and requested that they intervene and prevent his removal from the program for failing to meet the minimum purchase requirement. (Doc. 5 at 7).

8. Neither Culliver nor Allen intervened, and Plaintiff was dropped from the hobby craft program. (Id.).

9. Plaintiff alleges that his removal from the program by Officer Lang was not

based on his failure to comply with the quarterly minimum purchase requirement but, rather, was in retaliation for Plaintiff's alleged involvement[1] in reporting to prison officials that fellow inmate, Charlie Barnes, planned to escape. (Id. at 8).

10. According to Plaintiff, Defendant Lang was upset at Plaintiff's purported involvement in reporting inmate Barnes because Officer Lang and inmate Barnes were lovers, and they were running an illegal operation out of the leather shop, selling thousands of wallets to an unauthorized outside purchaser.[2] (Id.).

11. On July 9, 2008, Plaintiff filed the present § 1983 action against the ADOC,[3] Commissioner Richard Allen, Warden Grantt Culliver, and Correctional Officer Allen Lang. (Doc. 5 at 1).

12. Plaintiff claims that Defendant Lang violated his First Amendment rights by dismissing him from the hobby craft program in retaliation for reporting the planned

---

[1] Plaintiff denies that he was the one who reported inmate Barnes' escape plan to prison officials. (Doc. 19 at 5).

[2] Plaintiff alleges that he had a history of problems with Defendant Lang, including complaining to Lang's supervisors about Lang's abusive conduct toward Plaintiff and his wife on the visiting yard. (Doc. 5 at 9). With respect to Plaintiff's removal from the hobby craft program, however, he alleges only that Officer Lang acted in retaliation for Plaintiff's alleged involvement in reporting inmate Barnes' escape plan. (Id. at 8).

[3] Although Plaintiff lists the ADOC as a defendant in the style of his Complaint, he makes no allegations whatsoever against the ADOC. Moreover, the ADOC is not subject to suit under § 1983. See Sasser v. Alabama Dep't of Corrs., 373 F. Supp. 2d 1276, 1291 (M.D. Ala. 2005) ("Plaintiff's section 1983 claims against the ADOC for all relief . . . are barred by the Eleventh Amendment."). The Eleventh Amendment bars suit directly against a state or its agencies, regardless of the nature of relief sought. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Thus, Plaintiff's claims against the ADOC in this action are subject to summary dismissal.

escape of inmate Barnes. (Id. at 8-9).

13. In addition, Plaintiff alleges that Defendant Lang wrongfully deprived him of participating in "the leather shop positive intervention program for inmates," which the Court construes as a Fourteenth Amendment due process claim. (Id. at 8).

14. With respect to Defendants Allen and Culliver, Plaintiff alleges that they "are liable under supervisory liability" because Plaintiff "informed them of Lan[g]'s abusive conduct and they failed to stop him. . . ." (Id. at 9).

15. Plaintiff seeks compensatory damages and injunctive relief. (Id. at 8).

16. In their Answer and Special Report filed on June 22, 2009, Defendants deny Plaintiff's allegations and assert, *inter alia*, the defenses of absolute and qualified immunity.[4] (Docs. 12, 13).

---

[4] In his Complaint, Plaintiff states that he is suing Defendants in their official and individual capacities. As state officials, Defendants are absolutely immune from suit *for damages* in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Defendants are not immune, however, from suit in their official capacities for prospective injunctive relief to end continuing violations of federal law. See Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336-37 (11th Cir. 1999) (citing Ex parte Young, 209 U.S. 123 (1908)).

Further, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Having found herein that Plaintiff's evidence does not establish a constitutional violation, "there is no necessity for further inquiries concerning

4

17. On July 9, 2009, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment. (Doc. 16).

18. On August 10, 2009, Plaintiff filed responses in opposition to Defendants' Motion for Summary Judgment. (Docs. 18, 19, 20).

19. On January 11, 2010, Defendants filed additional evidence supporting their motion for summary judgment and responding to Plaintiff's motions for discovery. (Doc. 21).

20. Defendants' motion , Plaintiff's responses, and the evidence submitted by the parties are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

3. All of the evidence and factual inferences reasonably drawn from the evidence

---

qualified immunity." <u>Saucier</u>, 533 U.S. at 201. Moreover, Plaintiff's claim for injunctive relief is pretermitted as well.

must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H.</u>

<u>Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d

1250, 1280 (11th Cir. 2004).

    4. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not
> rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial. If
> the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

    5. "[T]here is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely

colorable, . . . or is not significantly probative, . . . summary judgment may be granted."

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations

omitted). "Summary judgment is mandated where a party 'fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v.</u>

<u>Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III. DISCUSSION

    1. In this action, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged

constitutional deprivations arising out of his removal from the hobby craft program at

Holman prison.

2. Specifically, Plaintiff claims that, on May 17, 2008, Defendant Lang violated his First Amendment rights by removing him from the program in retaliation for allegedly reporting to prison officials that inmate Charlie Barnes planned to escape.  (Doc. 5 at 8-9).

3. Plaintiff further alleges that his removal from the program by Defendant Lang constituted a deprivation of his due process rights under the Fourteenth Amendment. (Id.).

4. Plaintiff also claims that Defendants Allen and Culliver are liable for these constitutional violations for failing to intervene and prevent Defendant Lang from removing Plaintiff from the program.  (Id. at 9).

5. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

6. For the reasons set forth below, Plaintiff's § 1983 claims against these Defendants fail as a matter of law.

A.    Respondeat Superior Liability.

7. In his Complaint, Plaintiff bases his First Amendment retaliation claim against Defendants Allen and Culliver on the theory of *respondeat superior*, that is, that these

Defendants, as Officer Lang's supervisors, are responsible for Lang's retaliatory dismissal of Plaintiff from the hobby craft program.[5]  (Doc. 5 at 9).

8. In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights."  Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted).

9. Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*.  See Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

10.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability).  Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  Gonzalez, 325 F.3d at ----, 2003

---

[5] With respect to Plaintiff's due process claim, Plaintiff appears to proceed on the theory that Defendants Allen and Culliver were personally involved in the denial of due process. Plaintiff alleges that he wrote Defendants Allen and Culliver and asked them to intervene in his removal from the program, and they failed to do so.  (Doc. 5 at 7).  Therefore, the Court's discussion of *respondeat superior* liability applies only to Plaintiff's retaliation claim.

> WL 1481583, at *5; <u>Brown v. Crawford</u>, 906 F.2d 667, 671
> (11th Cir. 1990). The necessary causal connection can be
> established "when a history of widespread abuse puts the
> responsible supervisor on notice of the need to correct the
> alleged deprivation, and he fails to do so." <u>Gonzalez</u>, 325
> F.3d at ----, 2003 WL 1481583, at *5 (quoting <u>Braddy v. Fla.
> Dept. of Labor & Employment</u>, 133 F.3d 797, 802 (11th
> Cir.1998)); <u>Brown</u>, 906 F.2d 671. Alternatively, the causal
> connection may be established when a supervisor's "'custom
> or policy ... result[s] in deliberate indifference to
> constitutional rights'" or when facts support "an inference that
> the supervisor directed the subordinates to act unlawfully or
> knew that the subordinates would act unlawfully and failed to
> stop them from doing so." <u>Gonzalez</u>, 325 F.3d at ----, 2003
> WL 1481583, at *5 (quoting <u>Rivas v. Freeman</u>, 940 F.2d
> 1491, 1495 (11th Cir. 1991)); <u>Hartley</u>, 193 F.3d at 1263; <u>see
> also</u> <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1560-61
> (11th Cir. 1993). "The standard by which a supervisor is held
> liable in [his] individual capacity for the actions of a
> subordinate is extremely rigorous." <u>Gonzalez</u>, 325 F.3d at
> ----, 2003 WL 1481583, at *4 (internal quotation marks and
> citation omitted).

<u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).

11. In instances in which supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" <u>Pinkney v. Davis</u>, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 820 (1985)).

12. "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." <u>Id.</u> (citations omitted).

13. Assuming, *arguendo*, that Officer Lang's dismissal of Plaintiff from the hobby

craft program was retaliatory in nature and did violate Plaintiff's First Amendment rights as alleged, Plaintiff has failed to establish any personal involvement[6] on the part of Commissioner Allen or Warden Culliver in the retaliatory conduct or any custom or policy of Commissioner Allen or Warden Culliver which led to the retaliation by Officer Lang.

14. Thus, because Plaintiff's retaliation claim against Defendants Allen and Culliver is based solely on a theory of *respondeat superior* liability, it fails as a matter of law.

B.    No First Amendment Violation.

15. In addition to the foregoing, Plaintiff's retaliation claim fails as a matter of law as to all of the Defendants for lack of evidence of a constitutional violation.

16. As discussed above, Plaintiff claims that Defendant Lang removed him from the hobby craft program in retaliation for Plaintiff's purported involvement in reporting to prison officials that fellow inmate Barnes was planning to escape. (Doc. 5 at 8).

17. According to Plaintiff, Barnes was transferred from Holman to another facility immediately following the discovery of his escape plan. (Id.).

18. Plaintiff alleges that Defendant Lang was upset about these events because Lang and inmate Barnes were sexually involved and because they were running an illegal

---

[6] Although Plaintiff alleges that he wrote Defendants Allen and Culliver and asked them to intervene in his dismissal from the program, he states that he told them that he was being removed for failing to meet the $120 quarterly minimum purchase requirement for craft supplies. (Doc. 5 at 7).  There no evidence that Allen or Culliver had any knowledge that Officer Lang purportedly was removing Plaintiff from the program in retaliation for reporting inmate Barnes' escape plan.

operation out of the hobby shop.  (Id.).

19. According to Plaintiff, "Officer Lan[g] is strongly alleged to have been receiving monetary kick[] backs from inmate Barnes and sexual favors in return for him looking the other way, by approving his mail-out boxes loaded down with the wallets to Tanner Leather."  (Id.).

20. "To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action."  Flynn v. Scott, 2006 WL 1236718, *5 (M.D. Ala. 2006) (unpublished) (citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir. 1986); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003)).

> 21.    An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  Merely alleging the ultimate fact of retaliation, however, is insufficient. . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . .  If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate.  This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence.  The prison official has a burden of production, not of persuasion, and

thus does not have to persuade a court that he or she actually was motivated by the reason advanced. Burdine, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

Flynn, 2006 WL 1236718 at *5-6 (citations omitted).

22. A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred *but for* the retaliatory motive." Hempstead v. Carter, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (unpublished) (emphasis added) (citations omitted). "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Id. (citations omitted)). However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Id. (quoting Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)).

23. Federal courts must carefully scrutinize retaliation claims. "[P]risoners often attempt to 'inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them.'" Flynn, 2006 WL 1236718, *5 (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)). "Carefully scrutinizing such claims is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Id. (citations and internal quotation marks omitted). "This is so because virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." Id. (citations and internal

12

quotation marks omitted).

24.     In assessing retaliation claims, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995) (citing <u>Sandin v. Conner</u>, 515 U.S. 472, 487, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596-97, 140 L. Ed. 2d 750 (1998) (internal quotation marks omitted). Indeed, while mindful that Plaintiff may not be held to a heightened burden of proof, <u>see</u> <u>Crawford-El</u>, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions and actions of prison officials and "the ease with which claims of retaliation may be fabricated."

<u>Hempstead</u>, 2006 WL 2092383, *6 (citations omitted).

25. For purposes of this motion for summary judgment, the Court assumes, without deciding, that Plaintiff was engaged in a constitutionally protected activity, *i.e.*, his right to free speech under the First Amendment, when he allegedly reported to prison officials that inmate Barnes was planning to escape. <u>See generally</u> <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1333 (11th Cir. 2008) ("[I]t is well established that a prison inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'") (quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)) .

13

26. The Court further assumes, for purposes of this motion for summary judgment, that Plaintiff has carried his initial burden of presenting prima facie proof of retaliation.

27. Therefore, the burden shifts to Defendants to articulate "a legitimate, non-retaliatory reason for the adverse decision or action." Flynn, 2006 WL 1236718 at *6.

28. As discussed above, the evidence shows that Warden Culliver instituted a policy whereby each inmate given the privilege of working in the hobby craft program had to personally purchase a minimum of $120 in craft supplies every quarter to stay in the program. (Doc. 13, att. 1 at 1).

29. According to Warden Culliver, "[t]his policy was put into practice to stop inmates from hoarding leather boxes and allowing other unauthorized inmates to work out of them." (Id.).

30. It is undisputed that Plaintiff did not meet the quarterly minimum purchase requirement mandated by Warden Culliver. (Doc. 19 at 4-5; Doc. 21, att. 1 at 20-30; Doc. 13, att. 1 at 1).

31. Therefore, on or about May 17, 2008, Plaintiff and sixteen other inmates, who also had not met the minimum purchase requirement, were dismissed from the hobby craft program. (Doc. 21, att. 1 at 5; Doc. 13, att. 1 at 2).

32. Based on this evidence, Defendants have met their burden of articulating a legitimate, non-retaliatory reason for the adverse action, "which is clear, reasonably specific and worthy of credence." Flynn, 2006 WL 1236718 at *6.

33. The burden, therefore, shifts back to Plaintiff to persuade the Court "by

sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation." Id. This Plaintiff has failed to do.

34. Given the evidence that sixteen other inmates were removed from the program at the same time that Plaintiff was removed, and for the same proffered reason, *i.e.*, they had failed to meet the program's quarterly minimum purchase requirement (Doc. 21, att. 1 at 5; Doc. 13, att. 1 at 2), Plaintiff's allegations of retaliation are insufficient to show that the reason proffered by Defendants is pretextual.

35. This Court must carefully scrutinize retaliation claims arising from adverse actions taken by prison officials against an inmate and must approach such claims "with skepticism and particular care." Hempstead, 2006 WL 2092383 at *6.

36. Because Plaintiff has failed to show that his dismissal from the hobby craft program would not have occurred but for the alleged retaliatory motive, his retaliation claim fails as a matter of law.

C.       No Fourteenth Amendment Violation.

37. As discussed above, the Court has construed Plaintiff's allegations that he has been wrongfully deprived of participating in the hobby craft program as asserting a Fourteenth Amendment due process claim. (Doc. 5 at 8).

38. The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

39. In this case, Plaintiff appears to allege the deprivation of his liberty[7] as a result of his dismissal from the hobby craft program. (Doc. 5 at 8).

40. Holman prison Standard Operating Procedure No. 14-002 , adopted on or around October 21, 2003, contains nine pages of procedures, responsibilities, and rules governing the operation of the hobby craft shop at Holman prison. (Doc. 21, att. 1 at 6-14).

41. SOP 14-002 requires strict compliance with the rules from inmates participating in the program and specifies that: "[f]ailure to comply with the rules of the institution, present hobby shop rules, *or rules to be set forth in the future* will be subject to dismissal from the craft shop and disciplinary action." (Id. at 14) (emphasis added).

42. Some time prior to September 1, 2005, Warden Culliver revised SOP 14-002 to additionally require that each inmate participating in the program spend a minimum of $120 per quarter on craft supplies in order to remain in the program.

 (Doc. 13, att. 1 at 1; Doc. 21, att. 1 at 33).

---

[7] Plaintiff makes a passing reference in his Complaint to a "loss of property he had in the leather shop." (Doc. 5 at 8). There is no evidence, however, that Plaintiff suffered any loss of property as a result of being removed from the hobby craft program. To the contrary, Plaintiff alleges that Defendant Lang "informed the Plaintiff he had 30 days to pack all his things and send them home." (Id. at 7). Assuming that Plaintiff suffered a property loss, however, "all the Due Process Clause requires is the availability of an adequate post-deprivation remedy." Blair v. Meeks, 2009 WL 3157238, *1-2 (M.D. Ala. 2009) (citing Parratt v. Taylor, 451 U.S. 527, 538 (1981), *overruled on other grounds,* Daniels v. Williams, 474 U.S. 327 (1986); Tinney v. Shores, 77 F.3d 378, 382 (11th Cir. 1996); Rodriguez-Mora v. Baker, 792 F.2d 1524, 1527 (11th Cir. 1986)). "The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for [a plaintiff] to seek redress for the loss of his property." Blair, 2009 WL 3157238 at *2 (citing Ala. Code § 41-9-60, et seq.). Consequently, Plaintiff's allegation that his due process rights were violated as a result of Defendants' deprivation of his property provides no basis for relief in this cause of action.

43. Plaintiff failed to comply with the minimum purchase requirement, and Defendant Lang dismissed him from the program. (Doc. 21, att. 1 at 5; Doc. 13, att. 1 at 2).

44. Plaintiff claims that this dismissal violated his Fourteenth Amendment right to due process. The Court disagrees.

45. The Supreme Court has stated that there are two circumstances in which a prisoner can be deprived of a liberty interest beyond the deprivation associated with the prisoner's confinement. See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). First, a liberty interest may arise from the "Due Process Clause of its own face," which extends procedural safeguards to a prisoner when his liberty is restrained in a way that exceeds the sentence imposed by the court. Id. Secondly, states may create liberty interests by conferring certain benefits to prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Wallace v. Hamrick, 229 Fed. Appx. 827, 830 (11th Cir. 2007) (unpublished).[8]

46. With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976). This is because the Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken "'within the sentence imposed.'" Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d

_____

[8] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3 n.5 (11th Cir. 2007) (unpublished).

675 (1983).

West v. Higgins, 2009 WL 2993823, *2 (11th Cir. 2009) (unpublished).

47. With respect to Plaintiff's due process claim based on his dismissal from the prison hobby craft program, federal case law is clear that the Due Process Clause does not confer, nor has the State created, a federal constitutional right for inmates to participate in rehabilitative or recreational prison programs such as the one at issue here.  See McKune v. Lile, 536 U.S. 24, 39 (2002) (inmate's transfer to another facility does not implicate a liberty interest, even if it results in the loss of access to vocational, educational, recreational, and rehabilitative programs); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (no due process protections required for loss of eligibility to participate in prison rehabilitative programs); West, 2009 WL 2993823, at *2 ("An inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before."); Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1097 (W.D. Wis. 2007) ("Put simply, there is no plausible argument that petitioner had a protected liberty interest in remaining in the hobby crafts program or the softball league at the Federal Correctional Institution. . . .).

48. "An essential tool of prison administration . . . is the authority to offer inmates various incentives to behave."  McKune, 536 U.S. at 39-40 (inmate's loss of access to his personal television, prison organizations, gym area, and canteen and other privileges does not implicate a liberty interest).  "The Constitution accords prison officials wide latitude

to bestow or revoke these perquisites as they see fit." Id.

49. Because Plaintiff has no liberty interest in remaining in the hobby crafts program at Holman, his allegations that he was denied due process in connection with his removal from the program provide no basis for relief in this cause of action.

## IV.  CONCLUSION

50. Based on the foregoing, the Court concludes that Defendants, the ADOC, Commissioner Richard Allen, Warden Grantt Culliver, and Officer Allen Lang, are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

51. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

52. In addition, the Court finds that Defendants have adequately responded to the Plaintiff's pending motions for discovery.  (Doc. 21).  Therefore, Plaintiff's pending motions (Docs. 14, 17) are due to be denied as moot.

53. The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

DONE this 25th day of January, 2010.

_  s/WILLIAM E. CASSADY_
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).